UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEGAN SHIELDS, | No. 2:18-cv-2285 DB |
| Plaintiff, | |
| v. | ORDER |
| ANDREW SAUL, Commissioner of Social Security[1], | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff's motion argues that the Administrative Law Judge erred at step two of the sequential evaluation, improperly rejected medical opinion evidence, and improperly rejected witness testimony.

////

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019). Accordingly, Andrew Saul is substituted in as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c). (See ECF Nos. 7 & 8.)

1

For the reasons explained below, plaintiff's motion is granted in part, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

**PROCEDURAL BACKGROUND**

In April of 2015, plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act") alleging disability beginning on January 1, 2015. (Transcript ("Tr.") at 16, 166-74.) Plaintiff's alleged impairments included diabetes, depression, and scoliosis. (Id. at 58.) Plaintiff's application was denied initially, (id. at 86-90), and upon reconsideration. (Id. at 99-103.)

Thereafter, plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on May 23, 2017. (Id. at 34-57.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 34-56.) In a decision issued on July 28, 2017, the ALJ found that plaintiff was not disabled. (Id. at 28.) The ALJ entered the following findings:

> 1. The claimant has not engaged in substantial gainful activity since April 24, 2015, the application date (20 CFR 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairments: type 1 diabetes mellitus, fibromyalgia, and scoliosis (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except she is limited to occasional climbing of ladders, ropes, and scaffolds. She is able to frequently balance, stoop, kneel, crouch, crawl, and climb ramps and stairs.
>
> 5. The claimant is capable of performing past relevant work as a writer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).
>
> 6. The claimant has not been under a disability, as defined in the Social Security Act, since April 24, 2015, the date the application was filed (20 CFR 416.920(f)).

(Id. at 18-27.)

////

On June 22, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's July 28, 2017 decision. (Id. at 1-3.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on August 21, 2018. (ECF No. 1.)

**LEGAL STANDARD**

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

////

3

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion asserts the following three principal claims: (1) the ALJ's treatment of the medical opinion evidence constituted error; (2) the ALJ's treatment of the witness testimony constituted error; and (3) the ALJ erred at step two of the sequential evaluation.[3] (Pl.'s MSJ (ECF No. 18) at 11-28.[4])

**I.  Medical Opinion Evidence**

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining

---

[3] The court has reordered plaintiff's arguments for purposes of clarity and efficiency.

[4] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

4

physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

Here, plaintiff challenges the ALJ's treatment of opinions offered by Dr. Kevin Moynihan, a treating physician, and Nurse Practitioner Danielle Bassett.[5] (Pl.'s MSJ (ECF No. 18) at 19-23.) The ALJ discussed Dr. Moynihan and N.P. Bassett's opinions first at step two of the sequential evaluation, stating "Kevin Moynihan, M.D., and Danielle Bassett, N.P., filled out a medical source statement on October 19, 2015, finding the claimant to have good, fair, and fair to poor mental work-related abilities." (Tr. at 20.) The ALJ went on to state:

> I accord partial weight to the opinion of Dr. Moynihan and Ms. Bassett because Ms. Bassett is the claimant's primary care provider. However, I do not adopt the opinion, and I give little weight to their assessment of the claimant having fair to poor limitations in her mental work-related abilities because of the claimant's limited treatment history with a mental health specialist and because the provider's own treatment notes do not support more than mild limitations.

(Id.)

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim. The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599,

---

[5] The court would normally address the opinions separately but will address them together consistent with the ALJ's treatment of the opinions.

5

602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice).

The ALJ provided nothing more than broad and vague reasons unsupported by citation to evidence. The ALJ's reliance on the broad and vague assertion that the "provider's own treatment notes do not support more than mild limitations" is especially problematic here, given that treatment notes reflect plaintiff as being treated with medication as a result of impairment from depression and being assessed with Global Assessment of Functioning ("GAF") scores as low as 50.[6] (Tr. at 21, 336, 376, 381, 480.)

Moreover, the Ninth Circuit has

> . . . particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."

Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-300 (9th Cir. 1999) (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)).

The ALJ also discussed Dr. Moynihan and N.P. Bassett's opinion in addressing plaintiff's residual functional capacity, stating:

> Kevin Moynihan, M.D., and Danielle Bassett, N.P., filled out a medical source statement on October 19, 2015, finding the claimant unable to perform even less than sedentary work due to an inability to sit, stand, or walk for more than 1 hour each in an 8 hour workday.
>
> Ms. Bassett filled out another medical source statement about the claimant on April 6, 2017. She did not appropriately answer the questions, and therefore, it is unclear whether she finds the claimant able to perform even sedentary work. However, she did indicate that the claimant's symptoms were likely severe enough to interfere with

---

[6] A GAF score represents a present rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV"); see also Keyser v. Commissioner Social Sec. Admin., 648 F.3d 721, 723 (9th Cir. 2011) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment."). "GAF scores are typically assessed in controlled, clinical settings that may differ from work environments in important respects." Garrison v. Colvin, 759 F.3d 995, 1003 n.4 (9th Cir. 2014). A GAF score in the range of 41 to 50 denotes: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV at 34.

> her attention and concentration needed to perform even simple repetitive tasks for more than 50% of the time.
>
> I accord little weight to the opinions of Dr. Moynihan and Ms. Bassett because other opinions are more consistent with the medical record, as was discussed in detail above. In addition, the opinions of Dr. Moynihan and Ms. Bassett are not supported by their own treatment notes. Furthermore, as was indicated above, the extent of limitations alleged by the claimant and indicated in Dr. Moynihan's and Ms. Bassett's opinions is not supported by her treatment history, noncompliance with treatment, objective findings, and activities of daily living.

(Tr. at 25-26.)

An ALJ errs where he assigns a medical opinion "little weight while doing nothing more than . . . asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." Garrison, 759 F.3d at 1012-13. In this regard, although the ALJ found these opinions to be inconsistent with other aspects of the record, it is entirely unclear which specific limitations the ALJ found inconsistent with what specific item of evidence.

Moreover, when an ALJ elects to afford the opinion of a treating physician less than controlling weight, the opinion must be "weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citing 20 C.F.R. § 404.1527(c)(2)-(6)). The ALJ's failure to discuss these factors "alone constitutes reversible legal error." (Id. at 676.)

Accordingly, for the reasons stated above, the court finds that the ALJ failed to offer a specific and legitimate, let alone clear and convincing, reason for rejecting the opinion of Dr. Moynihan. And the ALJ failed to offer a germane reason for rejecting the opinion of N.P. Bassett.[7] Plaintiff is, therefore, entitled to summary judgment on the claim that the ALJ's treatment of the medical opinion evidence constituted error.

---

[7] Although not discussed by the parties, "[a]n ALJ may discount the opinion of an 'other source,' such as a nurse practitioner, if she provides 'reasons germane to each witness for doing so.'" Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017) (quoting Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012)).

7

II. **Witness Testimony**

   A. **Plaintiff's Subjective Testimony**

Plaintiff also argues that the ALJ's treatment of plaintiff's testimony constituted error. (Pl.'s MSJ (ECF No. 18) at 24-27.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so . . . .

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Soc. Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking . . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." Thomas v. Barnhart, 278 F.3d 947, 958-59

(9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id.

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. However, plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not "entirely consistent with the medical evidence and other evidence in the record[.]" (Tr. at 24.)

In support of this determination the ALJ relied, in part, on the fact that although plaintiff alleged disability beginning on January 1, 2015, plaintiff worked in the first and second quarters of 2015. (Id.) The ALJ noted that plaintiff's "work activity that occurred after her alleged onset date of disability is inconsistent with her reported severity of her symptoms and limitations." (Id.) This is a clear and convincing reason for rejecting a plaintiff's testimony. See Huizar v. Commissioner of Social Sec., 428 Fed. Appx. 678, 680 (9th Cir. 2011) (clear and convincing reason where "ALJ found that [plaintiff's] ability to continue working was inconsistent with her testimony about the severity of her impairments").

Another reason given by the ALJ for rejecting plaintiff's testimony was that although plaintiff was advised "that she needed to do physical therapy" plaintiff "refused the treatment." (Tr. at 24.) That finding is supported by the record. (Id. at 376.) "Our case law is clear that if a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, an ALJ may use such failure as a basis for finding the complaint unjustified or exaggerated." Orn v. Astrue, 495 F.3d 625, 638 (9th Cir. 2007).

Accordingly, the court finds that the ALJ provided a clear and convincing reason for rejecting plaintiff's testimony. Plaintiff, therefore, is not entitled to summary judgment with respect to the claim that the ALJ's treatment of plaintiff's subjective testimony constituted error.

**B.     Lay Witness Testimony**

Plaintiff next argues that the ALJ improperly rejected lay witness testimony. (Pl.'s MSJ (ECF No. 18) at 27-28.) The testimony of lay witnesses, including family members and friends, reflecting their own observations of how the claimant's impairments affect her activities must be

considered and discussed by the ALJ. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006); Smolen, 80 F.3d at 1288. Persons who see the claimant on a daily basis are competent to testify as to their observations. Regennitter, 166 F.3d at 1298; Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993). If the ALJ chooses to reject or discount the testimony of a lay witness, he or she must give reasons germane to each particular witness in doing so. Regennitter, 166 F.3d at 1298; Dodrill, 12 F.3d at 919. The mere fact that a lay witness is a relative of the claimant cannot be a ground for rejecting the witness's testimony. Regennitter, 166 F.3d at 1298; Smolen, 80 F.3d at 1289. Nor does the fact that medical records do not corroborate the testimony provide a proper basis for rejecting such testimony. Smolen, 80 F.3d at 1289. It is especially important for the ALJ to consider lay witness testimony from third parties where a claimant alleges symptoms not supported by medical evidence in the file and the third parties have knowledge of the claimant's daily activities. 20 C.F.R. § 404.1513(e)(2); SSR 88-13.

Here, the ALJ acknowledged the lay witness statement offered by plaintiff's father. (Tr. at 24.) The ALJ characterized the testimony by concluding it "predominantly corroborated the claimant's statements." (Id.) The ALJ found the statement "only partially persuasive except in regards to the severity of the claimant's impairments[.]" (Id.) The sole reason given by the ALJ for this finding was the conclusion that "the medical evidence does not support such severe limitations." (Id.)

However, "[a] lack of support from medical records is not a germane reason[.]" Diedrich v. Berryhill, 874 F.3d 634, 640 (9th Cir. 2017); see also Bruce v. Astrue, 557 F.3d 1113, 1116 (9th Cir. 2009) ("Nor under our law could the ALJ discredit her lay testimony as not supported by medical evidence in the record.").

Accordingly, plaintiff is entitled to summary judgment on the claim that the ALJ's treatment of the lay witness testimony constituted error.

**III.     Step Two Error**

Finally, plaintiff argues that the ALJ erred at step two of the sequential evaluation by finding that plaintiff did not suffer a severe mental impairment. (Pl.'s MSJ (ECF No. 18) at 11-19.) At step two of the sequential evaluation, the ALJ must determine if the claimant has a

medically severe impairment or combination of impairments. Smolen v. Chater, 80 F.3d 1273, 1289-90 (9th Cir. 1996) (citing Yuckert, 482 U.S. at 140-41). The Commissioner's regulations provide that "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a). Basic work activities are "the abilities and aptitudes necessary to do most jobs," and those abilities and aptitudes include: (1) physical functions such as walking, standing, sitting, lifting, and carrying; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. §§ 404.1521(b) & 416.921(b).

The Supreme Court has recognized that the Commissioner's "severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." Yuckert, 482 U.S. at 153. However, the regulation must not be used to prematurely disqualify a claimant. Id. at 158 (O'Connor, J., concurring). "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual[']s ability to work." Smolen, 80 F.3d at 1290 (internal quotation marks and citation omitted).

"[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (quoting Social Security Ruling ("SSR") 85-28); see also Ukolov v. Barnhart, 420 F.3d 1002, 1006 (9th Cir. 2005) (claimant failed to satisfy step two burden where "none of the medical opinions included a finding of impairment, a diagnosis, or objective test results"). "Step two, then, is 'a de minimis screening device [used] to dispose of groundless claims[.]'" Webb, 433 F.3d at 687 (quoting Smolen, 80 F.3d at 1290); see also Edlund v. Massanari, 253 F.3d 1152, 1158-59 (9th Cir. 2001) (discussing this "de minimis standard"); Tomasek v. Astrue, No. C-06-07805 JCS, 2008 WL 361129, at *13 (N.D. Cal.

Feb.11, 2008) (describing claimant's burden at step two as "low").

The ALJ's step two analysis of plaintiff's mental impairment was erroneous for several reasons. First, the ALJ's analysis was based on the erroneous treatment of the opinions offered by Dr. Moynihan and N.P. Bassett, as detailed above. (Tr. at 20.) Second, in reaching the determination that plaintiff's mental impairment caused no more than mild limitations, the ALJ attempted to justify the rejection of evidence that plaintiff was "seen for behavioral health service," was "receiving medication treatment from her primary care provider for her bipolar depression," and had been assessed with a GAF score showing "serious impairment in social, occupation, or school functioning" as somehow insufficient. (Id. at 20-21.)

As noted above, the ALJ's conclusion that the claimant lacks a medically severe impairment or combination of impairments is valid only when that conclusion is "clearly established by medical evidence." Webb, 433 F.3d at 687. On this record, the court cannot say that it is clearly established by the medical evidence that plaintiff lacks a medically severe mental impairment. See Ortiz v. Commissioner of Social Sec., 425 Fed. Appx. 653, 655 (9th Cir. 2011) ("This is not the total absence of objective evidence of severe medical impairment that would permit us to affirm a finding of no disability at step two."); Webb, 433 F.3d at 687 ("Although the medical record paints an incomplete picture of Webb's overall health during the relevant period, it includes evidence of problems sufficient to pass the de minimis threshold of step two."); Russell v. Colvin, 9 F.Supp.3d 1168, 1186-87 (D. Or. 2014) ("On review, the court must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that Ms. Russell did not have a medically severe impairment or combination of impairments."); cf. Ukolov, 420 F.3d at 1006 ("Because none of the medical opinions included a finding of impairment, a diagnosis, or objective test results, Ukolov failed to meet his burden of establishing disability.").

Moreover, after engaging in these erroneous findings the ALJ went on to apply the special psychiatric review technique. (Tr. at 22.) Where the ALJ determines the presence of a mental impairment at step two of the sequential evaluation 20 C.F.R. § 404.1520a "requires those reviewing an application for disability to follow a special psychiatric review technique." Keyser

v. Commissioner Social Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011).

> Under the special-technique regulation, if the ALJ determines that a mental impairment exists, he "must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document [his] findings." [20 C.F.R.] § 404.1520a(b)(1). The ALJ must also document "a specific finding as to the degree of limitation in each of" the four areas of functional limitation listed in § 404.1520a(c)(3). Id. § 404.1520a(e)(4). In the first three areas of functional limitations—(a) activities of daily living, (b) social functioning, and (c) concentration, persistence, or pace—the ALJ must rate the degree of limitation using "the following five-point scale: None, mild, moderate, marked, and extreme." Id. § 404.1520a(c)(4). The ALJ must rate the fourth functional area—(d) episodes of decompensation—using "the following four-point scale: None, one or two, three, four or more." Id. Next, the ALJ must determine if the mental impairment is severe, and if so, whether it qualifies as a listed impairment. Id. § 404.1520a(d). If the mental impairment is severe but is not a listed impairment, the ALJ must assess the claimant's RFC in light of how the impairment constrains the claimant's work abilities. See id. § 404.1520a(d)(3). The regulation specifically provides that the ALJ must document all of the special technique's steps. Id. § 404.1520a(e)(4).

Patterson v. Commissioner of Social Security Administration, 846 F.3d 656, 659 (4th Cir. 2017).

Here, the ALJ's special psychiatric review technique findings are essentially unreviewable and incomprehensible. In this regard, for each of the categories the ALJ simply recounted plaintiff's alleged impairments before reaching a summary conclusion that plaintiff's degree of impairment was only mild. For example, the ALJ stated:

> The next functional area is interacting with others. In this area, the claimant has mild limitation. The claimant shops for food in stores. She claims that she hates people, does not spend time with others, and is too depressed to do anything. She claims that she has problems getting along with others and that she does not want to talk with or see anyone. She claims that she has been fired or laid off from a job because of problems getting along with other people. For these reasons and based upon the claimant's ability to get alone (sic) with treatment providers and findings upon mental status examinations detailed above, the claimant is found to have no more than mild limitations in interacting with others.

(Tr. at 22.)

It is entirely unclear, however, what "these reasons" means or how it supports the ALJ's vague conclusion. Nor is it clear why the ALJ found that plaintiff's ability to get along with treatment providers corresponded to only mild impairment in interacting with others. And the

13

mental status examinations referred to by the ALJ included findings that plaintiff had "poor insight and judgment." (Id. at 21.) Had a "flat or depressed affect[.]" (Id. at 20.) A "depressed and irritable mood[.]" (Id.) And that plaintiff had a GAF score reflecting serious impairment in social, occupational, or school functioning. (Id. at 21.)

Under these circumstances, the court cannot find that the ALJ's step two finding was clearly established by medical evidence or free from error. Accordingly, the court finds that plaintiff is entitled to summary judgment as to the claim that the ALJ erred at step two of the sequential evaluation.

**CONCLUSION**

With error established, the court has the discretion to remand or reverse and award benefits. McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, in light of the ALJ's numerous errors so early in the sequential evaluation but nonetheless proper treatment of plaintiff's testimony, the court finds the record in this action is unclear and ambiguous, and that this matter must be remanded for further proceedings.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is granted in part and denied in part;

2. Defendant's cross-motion for summary judgment (ECF No. 23) is granted in part and denied in part;

3. The Commissioner's decision is reversed; and

4. This matter is remanded for further proceedings consistent with this order.

Dated: March 11, 2020

DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\shields2285.ord